[No. B216325. Second Dist., Div. Six. Mar. 15, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
REBIO TOWNSEND, Defendant and Appellant.

## COUNSEL

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith H. Borjon and A. Scott Hayward, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—Here we conclude possession of a "Molotov cocktail" is an offense involving an implied threat to use force or violence under the Mentally Disordered Offender (MDO) Act. (Pen. Code, § 2962.)[1]

Rebio Townsend appeals a judgment committing him to the State Department of Mental Health for treatment as an MDO following his conviction of possession of destructive devices, Molotov cocktails. (§ 12303.) We affirm.

### FACTS

Townsend filed a petition for a hearing (§ 2966, subd. (b)) following a Board of Parole Hearings determination that he met the MDO criteria. He waived his right to a jury trial.

At trial, psychiatrist David Fennell testified that Townsend met all the criteria for an MDO commitment. He said Townsend has a "schizoaffective disorder," impaired impulse control, a severe mood disorder, "low frustration tolerance," and "mental-health symptoms since approximately 1978." Fennell

---

[1] All statutory references are to the Penal Code.

also opined that Townsend's disorders are not in remission; he has "auditory hallucinations," has threatened medical staff, has a "lack of insight into his illness and . . . his need for treatment," has a long history of a "schizoaffective disorder," and he "distorts reality."

Townsend's commitment offense in October 2006 involved possession of "two unlighted Molotov cocktails." At the time of this offense, Townsend had "paranoid delusions." These included his delusional beliefs that his neighbors were "involved in systematically burglarizing homes . . . [and] malfeasance with the payment of mortgage payments . . . ." Townsend told law enforcement officers that "he carries [Molotov cocktails] for self-protection." Prior to his commitment offense, Townsend also had an arson conviction in March 2006.

Following his commitment offense, when he was a patient at a state hospital in 2008, Townsend sent a letter to a neighbor stating that he had placed 40 Molotov cocktails on her property. After the neighbor reported this incident, the police went to her yard and found 12 Molotov cocktails. Townsend subsequently told police that he was going to use the Molotov cocktails against "bad guys in the neighborhood."

At the conclusion of the prosecution's case, the trial court admitted several exhibits, including a psychological evaluation by forensic psychologist Richard A. Blak. In that report, Blak stated, "It appears that [Townsend] at the time of the controlling offense was certainly in a delusional state with ongoing paranoid ideations, particularly believing that he needed to carry an explosive device to protect himself." He noted that in his prior arson offense, a police officer saw Townsend pouring gasoline on a fire and ordered him to stop. But Townsend "responded 'shoot me' and then spun around spilling gasoline in the direction of the officer." Blak also said that in Townsend's 2008 letter to the neighbor about planting Molotov cocktails, Townsend "indicated that he would use them when released" from the state hospital.

Townsend did not testify and did not present a defense.

## DISCUSSION

### *A Commitment Offense Within the MDO Act*

██ Townsend contends that his commitment offense does not fall within the MDO Act. We disagree.

██ A defendant may be committed as an MDO if his commitment offense (1) was a crime " 'in which the prisoner used force or violence, or

caused serious bodily injury,' " or (2) was "a crime involving an implied threat to use force or violence likely to produce substantial physical harm." (*People v. Kortesmaki* (2007) 156 Cal.App.4th 922, 928 [67 Cal.Rptr.3d 706]; see § 2962, subd. (e)(2)(P) & (Q).) We agree with the People that Townsend's offense comes within the second category, a crime involving an implied threat to use force or violence.

In *People v. Ramirez* (1990) 50 Cal.3d 1158, 1186–1187 [270 Cal.Rptr. 286, 791 P.2d 965], our Supreme Court said, "The fact that defendant in this case did not actually use the sharpened knife in a threatening or violent manner when his possession of the weapon was discovered in the school infirmary does not mean that he did not engage in *criminal conduct involving the implied threat to use force or violence.* The concealed possession of the type of 'dirk' or 'dagger' involved here [citation] is prohibited precisely because such an implement *is a 'classic instrument[] of violence'* [citation] *that is 'normally used only for criminal purposes.*' " (Italics added.)

■ Townsend's possession of these classic instruments of violence could be used only for criminal purposes. "A Molotov cocktail has no use other than as a weapon . . . ." (*U.S. v. Ross* (5th Cir. 1972) 458 F.2d 1144, 1145.) It is essentially a " 'crude hand grenade.' " (*Id.* at p. 1145, fn. 2.) It is a bottle filled with a flammable liquid with a wick or rag which acts as a fuse to ignite this device. (*Ibid.*) It is a classic warfare weapon, and its only legitimate use is by military personnel.

Moreover, because these devices are bombs, they are more dangerous than other weapons typically used in crimes. "Almost uniquely, bombs have an *'inherently dangerous nature.*' " (*People v. Morse* (1992) 2 Cal.App.4th 620, 646 [3 Cal.Rptr.2d 343], italics added.) " 'A bomb has special characteristics which obviously differentiate it from all other objects. In the first place, the maker often loses control over the time of its detonation. . . . [I]t may wreak enormous havoc on persons and property. . . . [I]ts victims are often unintended sufferers. And finally, considering its vast destructive potentialities, it is susceptible of fairly easy concealment.' " (*Ibid.*)

■ Bombs "are so dangerous that even when *not* set to explode, their possession" is against the law. (*People v. Morse, supra,* 2 Cal.App.4th at p. 646; see also *U.S. v. Simmons* (4th Cir. 1996) 83 F.3d 686, 688 [a Molotov cocktail is a destructive device prohibited by federal law "regardless of whether the defendant has a match or lighter with which to ignite the device" because the bomb contains "explosive material"].) It is common knowledge that such a device may be ignited easily by accident.

Consequently, courts have declared that unlawfully possessing bombs in neighborhoods or communities "inherently involves a high probability of

death" (*People v. Morse, supra,* 2 Cal.App.4th at p. 646; see *People v. James* (1998) 62 Cal.App.4th 244, 270 [74 Cal.Rptr.2d 7]), and creates an "emergency situation" for law enforcement. (*People v. Remiro* (1979) 89 Cal.App.3d 809, 831 [153 Cal.Rptr. 89].) This justifies treating bomb possession offenders as being a higher risk to public safety. (*People v. DeGuzman* (2003) 113 Cal.App.4th 538, 546–547 [6 Cal.Rptr.3d 739].)

An underlying purpose of the MDO law is to protect the public from individuals whose crimes pose a danger to society. (*People v. Dyer* (2002) 95 Cal.App.4th 448, 455 [115 Cal.Rptr.2d 527].) People who carry bombs are obviously a threat to public safety. The danger is substantially increased when those who unlawfully possess these devices are, as here, mentally disordered, delusional and paranoid.

Townsend claims that possession of these devices is insufficient to constitute an MDO commitment offense. But there is no safe way to store Molotov cocktails. (*U.S. v. Jennings* (5th Cir. 1999) 195 F.3d 795, 799 [possessing bombs creates "the virtual inevitability that such possession will result in violence"].) Moreover, Townsend did not merely store them, he carried them, and the trial court could reasonably infer from his admissions that he intended to use them against people. He told law enforcement personnel at the time of his arrest that he "carries [Molotov cocktails] for self-protection." Fennell testified that "[i]f [Townsend] perceived a threat to *what he thought* was his own personal safety, *he would use them.*" (Italics added.)

Townsend's concept of personal safety was influenced by his severe mental disorders, which impaired his judgment. At the time of this offense, he had "paranoid delusions" that people in his neighborhood were "systematically burglarizing homes" and committing other imaginary acts. He also had delusions of persecution. The trial court could reasonably infer from Fennell's testimony and Blak's report that at the time of the commitment offense (1) Townsend irrationally viewed his neighbors as his enemies, and (2) his belief that he must carry Molotov cocktails for self-defense was a delusional symptom of his mental disorder and an implied threat to his neighbors.

Townsend cites *People v. Green* (2006) 142 Cal.App.4th 907 [48 Cal.Rptr.3d 464], and notes that crimes targeting only inanimate objects fall outside the MDO scheme. But Townsend admitted to police at the time of the commitment offense and again after he was hospitalized that the intended target for his incendiary devices is people. While committing arson, he spilled gasoline in the direction of a police officer. After he was hospitalized, Townsend threatened a neighbor and police found 12 Molotov cocktails he had planted on her property. He told police he was going to use those Molotov cocktails against people he perceived as "bad guys."

Townsend carried two Molotov cocktails with the intent to use them against people if he felt it was necessary. He had paranoid delusions about neighbors, impaired judgment, and a distorted concept of reality. These factors combine to constitute an implied threat to others, including the officers who arrested him. Too often police officers are killed or injured simply while removing bombs. (*People v. Morse, supra,* 2 Cal.App.4th at p. 631 [two police officers killed].)

The judgment is affirmed.

Yegan, J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 23, 2010, S181920.