Filed 10/10/13 (unmodified opn. attached)

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B242742 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA385119) |
| v. | |
| MAURICE DEON MILES, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on October 10, 2013, be modified as follows:

Delete the footnote at the bottom of page 1 that reads:

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II and III.

Replace with footnote that reads:

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II, III(A) and III(B)(2).  The title of part III is to be published.

There is no change in the judgment.


_____          _____

TURNER, P.J.                                          KUMAR, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B242742 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA385119) |
| v. | |
| MAURICE DEON MILES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge. Affirmed as modified.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Robert M. Snider, Deputy Attorney General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II and III.

# I. INTRODUCTION

Defendant, Maurice Deon Miles, appeals from a final judgment of conviction of firearm possession by a felon following a jury trial. (Former Pen. Code [1] §12021, subd. (a)(1), now § 29800, subd. (a)(1); Stats 2010, ch. 711.) (§§ 6; 667, subds. (b)-(i), 667.5, subd., (c)(9), 1170.12, 1192.7, subd. (c)(19).) Defendant had previously been convicted of robbery, a serious and violent felony. On July 19, 2012, defendant received a six-year state prison sentence. Defendant received 830 days of presentence credit, consisting of 415 days of actual custody and 415 of conduct credits.

In the published portion of this opinion, we discuss defendant's award of presentence conduct credits. Defendant committed his crime prior to the October 1, 2011 effective date of the Criminal Justice Realignment Act of 2011. (*People v. Moreno* (2013) 218 Cal.App.4th 846, 849; *People v. Garcia* (2012) 209 Cal.App.4th 530, 540.) But he was sentenced after the effective date of that act on July 19, 2012. Defendant contends his post-September 30, 2011 conduct credits should be calculated so he receives two days of conduct credits for every two days of time actually served. (§ 4019, subd. (f).) He reasons he is entitled to these credits based on the rule of lenity. (*In re Tartar* (1959) 52 Cal.2d 250, 257; *People v. Ralph* (1944) 24 Cal.2d 575, 581, overruled on another point in *People v. Yates* (1983) 34 Cal.3d 644, 650.) We respectfully disagree. We modify the award of presentence conduct credits but otherwise affirm the judgment.

[Parts II is deleted from publication. See post at page 5 where publication is to resume.]

# II. TESTIMONY

Defendant was originally charged with six counts. As noted, he was only convicted of a single firearm possession by a felon count. At trial, the prosecution

---

[1] All future statutory references are to the Penal Code.

presented testimony from Staneisha Randolph, Maresa Figueroa, and Officer Bradley Nielson. On June 1, 2011, Ms. Randolph lived with a daughter, a nephew, and a brother, Bobbie, in a one-bedroom house. Ms. Randolph's home was behind the principal residence, which was occupied by Ms. Figueroa. The front of Ms. Randolph's house was about 10 feet from Ms. Figueroa's house.

Two weeks before the June 1, 2011 incident, Ms. Figueroa saw defendant, Bobbie, and several others in the backyard passing around a gun. Ms. Figueroa stated the gun was a "dark, shiny, old, pistol, revolver." She saw defendant hold the gun. Later that night, Ms. Figueroa heard gunfire in her backyard. At trial, Ms. Figueroa testified the firearm defendant held resembled the gun photographed at the scene following defendant's arrest.

On June 1, 2011, Ms. Randolph was at home. Also present were Ms. Randolph's daughter and nephew and two visitors, Shawn Reece and Kimdrick Estrada. At about 5 p.m., defendant knocked on Ms. Randolph's bedroom door. Defendant wanted to talk with Mr. Estrada and Mr. Reece. Mr. Reece and defendant are cousins. Ms. Randolph testified Mr. Estrada and Mr. Reece hid in the bathroom and refused to come out. Defendant became upset and tried to come inside the bedroom by pulling on the door. However, Ms. Randolph held onto the bedroom door and managed to close and lock it. Ms. Randolph then heard defendant rip off the living room door. She ran to the living room and saw defendant barge in with his gun out. Ms. Randolph testified the gun was a revolver. She said the firearm resembled the gun photographed at the scene following defendant's arrest.

Defendant entered the bathroom and pointed the gun at Mr. Estrada's ribs. Defendant said to Mr. Estrada, "I will fucking kill you." From her house, Ms. Figueroa heard defendant say: "Do you think this is a game? I can waste you right now. I'll do you right now." Mr. Reece intervened by jumping in front of defendant.

After Ms. Randolph saw the gun, she grabbed the children. Ms. Randolph fled to Ms. Figueroa's house. Ms. Randolph told Ms. Figueroa to call the police because defendant had a gun. Ms. Randolph and Ms. Figueroa each spoke with the dispatcher.

3

They related that defendant had broken into Ms. Randolph's house with a gun. Ms. Randolph called the police a second time. She repeated that defendant had broken into her home with a gun. As they were calling the police, Ms. Figueroa observed defendant walking out of Ms. Randolph's house. Defendant walked onto the doorstep of Ms. Figueroa's house. Ms. Figueroa yelled to defendant, "I called the police, get off the back porch." Defendant responded, "Oh, you called the police on me?" Ms. Figueroa did not see defendant holding a gun that day. But she heard a clicking noise like "a gun being set back into a safe position" as defendant walk away from her porch. Defendant returned to Ms. Figueroa's door and confirmed the women had called the police before he walked away.

Officers Nielson and Steven Sieker arrived and saw defendant. Ms. Randolph approached the officers and pointed towards defendant. Officer Nielson asked defendant to stay there. But defendant fled down a driveway. Defendant dropped a handgun as he approached a fence. Defendant looked at Officer Nielson. Defendant picked up the gun and pointed it at Officer Nielson while in a crouched shooting position. Officer Nielson fired three shots at defendant but missed. Defendant continued running and got entangled on a wooden fence. Defendant then pointed the gun at Officers Nielson and Sieker. Officer Nielson fired another shot and missed defendant again. Then, defendant fled over the fence.

The officers decided to switch from chasing defendant to containing him. Defendant was found hiding behind a residence about two hours later. The police officers found a .38 caliber Smith & Wesson revolver on the ground in a nearby side yard. No fingerprints were found on the gun.

Defendant presented testimony from Mr. Reece and Officer Andreas An. Mr. Reece was dating Ms. Randolph at the time and believed he was the father of her unborn child. Mr. Reece later learned the baby was not his child. Mr. Reece believed Ms. Randolph was controlling and did not allow him to see other people.

On June 1, 2011, Mr. Reece spent the afternoon at Ms. Randolph's house with Mr. Estrada and Ms. Randolph drinking beer. Mr. Reece and Mr. Estrada were friends. From

4

the bathroom, Mr. Reece heard Ms. Randolph speaking to defendant. Mr. Randolph said that Mr. Reece was not at the residence. Mr. Reece did not hear a door being tugged or pulled off its hinges. After exiting the bathroom, Mr. Reece saw defendant talking with Mr. Estrada. Defendant did not threaten or point a gun at Mr. Estrada. Mr. Reece, Mr. Estrada, and defendant had a conversation and later walked out together. Mr. Reece heard Ms. Figueroa yell and curse at them as they walked towards defendant's residence. Mr. Reece and Mr. Estrada then walked to a nearby store to buy snacks. Mr. Reece heard gunshots and ran home. Later that night, Mr. Reece saw bullet holes in the black screen front door of his home. Later, Mr. Reece spoke with a police officer. Mr. Reece denied seeing defendant with a gun.

Officer An interviewed Ms. Randolph and Ms. Figueroa after the incident. Ms. Randolph told Officer An that she called the police and went outside after the officers arrived. Ms. Randolph said defendant fired one or two rounds at her and the police officers. Ms. Figueroa also related she saw defendant pull out a gun from his waistband and immediately heard gunshots. But Ms. Figueroa did not tell Officer An that defendant had threatened Mr. Estrada.

[The heading for part III is to be published.]

## III. DISCUSSION

[Part III(A) is deleted from publication. See post at page 7 where publication is to resume.]

### A. Defendant's Pro Se Evidentiary Insufficiency Contentions

Defendant filed his notice of appeal on July 19, 2012. After the notice of appeal was filed, we appointed counsel to represent defendant. After examination of the record, appointed appellate counsel has filed a brief in which no issues are raised. Instead,

appointed appellate counsel has asked us to independently review the entire record on appeal pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441-442. (See *Smith v. Robbins* (2000) 528 U.S. 259, 264.) On February 21, 2013, we advised defendant he had 30 days within which to submit by brief or letter any contentions or argument he wished us to consider.

On February 25, 2013, defendant submitted a "supplemental brief." He argues: Ms. Randolph and Ms. Figueroa's testimony was not credible because they shared the same lies and were biased against him; there are discrepancies in their testimony; Ms. Randoph and Ms. Figueroa came up with the same story; he never had a gun; Mr. Estrada was never threatened; and he never pointed a gun at any police officers. Defendant also challenges Officer Nielson's testimony. Defendant argues he did not shoot at anyone. Officer Nielson fabricated his testimony in order to justify having twice discharged his firearm. Finally, defendant asserts the prosecution failed to prove its case beyond a reasonable doubt.

Defendant argues there is insufficient evidence to support his conviction for firearm possession by a felon. In particular, he challenges the prosecution witnesses' credibility. But as a reviewing court we cannot reweigh the evidence or reevaluate a witness's credibility. (*People v. Nelson* (2011) 51 Cal.4th 198, 210; *People v. Booker* (2011) 51 Cal.4th 141, 172; *People v. D'Arcy* (2010) 48 Cal.4th 257, 293.) We have examined the entire record in accordance with *People v. Wende, supra,* 25 Cal.3d at pages 441-442. We agree with appointed appellate counsel that no arguable issue favorable to defendant exists on appeal. Given the deferential standard of review, all of defendant's contentions are frivolous.

## B.  Excessive Conduct Credits

### 1.  Rule of lenity

We requested and received letter briefs from counsel on whether defendant received excessive conduct credits.  The parties agree defendant is entitled to only two days of conduct credit for every four days of actual custodial confinement for the time spent in custody prior to October 1, 2011.  But defendant argues he is entitled to two days of conduct credit for each two days served in county jail after September 30, 2011.

Defendant committed his offense on June 1, 2011.  The offense was committed prior to October 1, 2011, the effective date of Assembly Bill No. 1X 17 (Stats. 2011, 1st Ex. Sess. 2011-2012 ch. 12, § 35).  (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 49-50; *People v. Garcia, supra,* 209 Cal.App.4th at p. 540.)  Assembly Bill No. 1X 17, which is the current version of section 4019, applies prospectively to an offense committed on or after October 1, 2011.  Section 4019, subdivision (h) provides:  "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011.  Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

Since defendant committed his offense prior to October 1, 2011, Senate Bill No. 76, which amended former sections 2933 and 4019, contains the controlling presentence conduct credit provisions.  (*People v. Garcia, supra,* 209 Cal.App.4th at pp. 535, 537-539.)  Under former section 4019, as amended by Senate Bill No. 76, local prisoners were awarded two days of conduct credit for every four days in county jail.  (Former § 4019, subds. (b) & (c), as amended by Stats. 2010, ch. 426, § 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 76 (2009–2010 Reg.

7

Sess.; *People v. Garcia, supra,* 209 Cal.App.4th at p. 537.) The Legislature explicitly stated: "It is the intent of the Legislature that if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody." (Former § 4019, subd. (f), as amended by Sen. Bill No. 76.) Senate Bill No. 76 applied to prisoners in local custody for crimes committed on or after September 28, 2010. (Former § 4019, subd. (g), as amended by Sen. Bill No. 76; *People v. Garcia, supra,* 209 Cal.App.4th at p. 538.)

Senate Bill No. 76 also amended section 2933 to award day-for-day conduct credit to certain prisoners in local presentence custody. (Former § 2933, subd. (e)(1), as amended by Stat. 2010, ch. 426, §1, eff. Sept. 28, 2010.) But defendant had a prior conviction for robbery, a serious and violent felony. (§§ 667, subds. (b)-(i), 667.5, subd., (c)(9), 1170.12, 1192.7, subd. (c)(19).) Under former section 2933, subdivision (e)(3), as amended by Senate Bill No. 76, defendant's prior conviction barred him from receiving the day-for-day conduct credit. Former section 2933, subdivision (e)(3) states: "Section 4019, and not this subdivision, shall apply if the prisoner is required to register as a sex offender, pursuant to Chapter 5.5. (commencing with Section 290), was committed for a serious felony, as defined in Section 1192.7, or has a prior conviction for a serious felony, as defined in Section 1192.7, or a violent felony, as defined in Section 667.5." This provision remained in effect until October 1, 2011. (*People v. Garcia, supra,* 209 Cal.App.4th at p. 538.) Thus, defendant's presentence conduct credit is calculated under former section 4019, as amended by Senate Bill No. 76. Based on the date defendant committed his offense, he was entitled to only two days of conduct credit for every four days of actual custodial confinement. Defendant is entitled to a total credit of 621 days consisting of 415 days for presentence custody and 206 days for conduct credits.

Defendant argues the rule of lenity requires us to award him presentence custody credit at two rates. As noted, defendant was arrested on June 1, 2011. Defendant argues between June 1 and September 30, 2011, he is entitled to six days of presentence custody credit for each four days of actual custody. But from October 1, 2011 to the July 19, 2012 sentencing, he should be awarded two days of conduct credit for two days of actual

8

custody.  The rule of lenity is inapplicable because there is no ambiguity in section 4019 as effective October 1, 2011.  Section 4019, subdivision (h) provides:  "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011.  Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."  The Legislature expressly made the enhanced custody credit prospective, applicable to only those defendants who committed their offense on or after October 1, 2011.  (*People v. Rajanayagam, supra,* 211 Cal.App.4th at pp. 51-52; *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1550, 1553; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 395-396.)  Thus, the rule of lenity is inapplicable.  Defendant is entitled to 621 days of custody consisting of 415 days of actual credit and 206 days of conduct credits.

[Part III(B)(2) is deleted from publication.  See post at p. 10 where publication is to resume.]

## 2.  Equal protection

Defendant also argues he should be awarded two days of conduct credit for two days of actual custody after October 1, 2011 based on equal protection principles.  He contends there is no rational basis to deny increased custody credits for those who committed crimes before October 1, 2011 but are in presentence custody after this date.  This contention has no merit.  (*People v. Brown* (2012) 54 Cal.4th 314, 328; *People v. Rajanayagam, supra,* 211 Cal.App.4th at p. 47; *People v. Verba* (2012) 210 Cal.App.4th 991, 994-997.)

[The balance of the opinion is to be published.]

## IV. DISPOSITION

The judgment is modified to grant defendant credit for 415 days in presentence custody and 206 days of conduct credits for total credits of 621 days. The judgment is affirmed in all other respects. Upon remittitur issuance, the superior court clerk is to prepare an amended abstract of judgment and deliver a copy to the Department of Corrections and Rehabilitation.

CERTIFIED FOR PARTIAL PUBLICATION

TURNER, P. J.

We concur:

MOSK, J.

KUMAR, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10