Filed 5/20/14  P. v. Petrovich CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>RICK ALAN PETROVICH,<br><br>  Defendant and Appellant. | F065617<br><br>(Super. Ct. No. RF6193A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Rick Petrovich of using a destructive device in violation of former Penal Code section 12303.3[1] and arson of property in violation of

---

[1] All further statutory references are to the Penal Code unless otherwise indicated. Former section 12303.3 now appears as section 18740 ["Every person who possesses,

section 451, subdivision (d). On appeal, Petrovich argues the trial court abused its discretion by admitting evidence of prior uncharged acts pursuant to Evidence Code section 1101, subdivision (b). Prosecutorial misconduct and cumulative error are also alleged to have tainted the verdict. Finally, Petrovich claims the trial court miscalculated his presentence conduct credits. We reject these contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2011, police responded to a 911 call at the residence of Tina Haugen on North Inyo Street in Ridgecrest. Ms. Haugen placed the call after discovering a fire burning in her driveway. She used a hose and cups of water to extinguish the flames while the police were en route.

Following their arrival, law enforcement officers observed and photographed a burned area measuring approximately 9 feet by 13 feet. The fire had caused cosmetic damage to two vehicles parked in Ms. Haugen's driveway and left scorch marks on the ground and on part of a wooden fence. Other evidence found at the scene appeared to police to be the remnants of a Molotov cocktail.[2] Petrovich, who was the victim's ex-boyfriend, was arrested in connection with the incident.

The Kern County District Attorney charged Petrovich by amended information with one count of using a destructive device (former § 12303.3) and two counts of arson of property (§ 451, subd. (d)). Petrovich was also accused of having suffered a prior strike and serious felony conviction for first degree burglary in October 2004. (See

explodes, ignites, or attempts to explode or ignite any destructive device or any explosive with intent to injure, intimidate, or terrify any person, or with intent to wrongfully injure or destroy any property, is guilty of a felony…."]. (See Cal. Law Rev. Com. com. to current statute ["Section 18740 continues former Section 12303.3 without substantive change."].)

[2] A Molotov cocktail is essentially a homemade fire bomb. "It is a bottle filled with a flammable liquid with a wick or rag which acts as a fuse to ignite [the] device." (*People v. Townsend* (2010) 182 Cal.App.4th 1151, 1155 (*Townsend*).)

§§ 667, subds. (b)-(e), 1170.12, subds. (a)-(d).)  A defense motion to bifurcate trial of the prior conviction allegations was granted.  The remaining charges were tried before a jury in June 2012.

**Motion in Limine re: Evidence of Prior Misconduct**

The prosecution moved in limine to introduce evidence concerning "prior acts of domestic violence and threats of domestic violence perpetrated by the defendant against Tina Haugen" over a seven-week period leading up to the subject incident.  The alleged misconduct consisted of two minor physical altercations and threatening statements made by Petrovich during telephone calls, over voicemail, and in text messages.  Defense counsel opposed the motion.

The prior incidents were found to be admissible under Evidence Code section 1101, subdivision (b), particularly because each involved the same perpetrator and victim.  The trial court explained, "[The evidence] is clearly relevant because it does go to show motive.  It goes to show intent, and, theoretically, can go to show identity in terms of who committed the crime on [June] 27th because it does show – in and of themselves these things show ill will, they show motive from Mr. Petrovich towards Ms. Haugen."  After conducting an analysis under Evidence Code section 352, the court allowed the evidence to be introduced at trial.

**Prosecution Case**

Tina Haugen met Petrovich in late March 2011 and became romantically involved with him in early April of that year.  The relationship turned dysfunctional in a matter of weeks.  Petrovich often accused Ms. Haugen of dating other men and had difficulty controlling his temper.

Ms. Haugen recounted an incident from May 7, 2011 in which Petrovich allegedly grabbed her arm during an argument, leaving a bruise.  Three days later, he left an insulting and profanity-laced message on her voicemail which threatened, "You fuck with me again, I'll break your fucking neck."  Frightened by the message, Ms. Haugen

3.

contacted police and obtained an emergency restraining order. She purportedly lifted the restraining order a week later after being pressured to do so by Petrovich. In that regard, she testified he had threatened to "beat me like the bitch that I am."

Ms. Haugen ended her relationship with Petrovich around mid-May 2011, but maintained contact with him well into the month of June. It was during this post-break-up period that Petrovich began living with a woman named Angela Lewis. For some reason this angered Ms. Haugen, who reacted to the news by gathering up clothes Petrovich had left at her house and dumping them in the street near Ms. Lewis' apartment. According to Ms. Lewis, the clothes were covered in motor oil and strewn across both sides of the road. Ms. Haugen claimed she left the clothes on the sidewalk in plastic bags and denied pouring motor oil on them. In response to specific inquiries by the prosecution, Ms. Haugen also denied soiling the clothes with urine and feces.

The clothing incident occurred on June 7, 2011. Approximately two weeks later, on June 20, 2011, Petrovich got into a heated argument with Ms. Haugen outside her place of employment and shoved her against his truck. Despite his aggressive behavior, Ms. Haugen continued to communicate with Petrovich until the day of the fire and frequently made disparaging remarks about the women with whom she believed he was having sexual relations. She referred to Angela Lewis in text messages as a "mutt" and a "whore," and told Petrovich that he was lowering his standards by sleeping with someone who was "uglier than sin." Ms. Haugen was also critical of Petrovich's stated intention to get back together with an ex-wife named Victoria Vorwerk – a person she colorfully described as being a "whore," "white trash," and a "cunt bag."

Ms. Haugen exchanged a series of text messages with Petrovich in the early morning hours of June 27, 2011. In one of the messages Petrovich cryptically said, "Your [sic] next." Later that day, she saw Petrovich driving near her residence and watched him pick up Angela Lewis from the home of one of her neighbors, Kellee Clodt. Petrovich then turned his truck around, drove past Ms. Haugen's house, and "flipped off"

4.

a woman named Theresa Thatcher who was smoking a cigarette in Ms. Haugen's front yard. Petrovich allegedly yelled, "I'll be back" as he left the neighborhood.

Theresa Thatcher was a friend of Ms. Haugen's who happened to be visiting her on the evening in question. She was familiar with Petrovich, and thus acknowledged him with her own hand gesture when he drove past the house. Ms. Thatcher was still at the residence approximately one or two hours later when she and Ms. Haugen smelled smoke and realized that their vehicles were on fire.

Investigating officers from the Ridgecrest Police Department later found the tell-tale signs of a Molotov cocktail in Ms. Haugen's driveway: shards of blackened glass, a burnt scrap of clothing which had apparently been used as a wick, and copious amounts of an oily substance that smelled like gasoline. The glass appeared to have come from a vodka bottle, as indicated by a Smirnoff label affixed to some of the broken pieces.

Detective Manuel Castaneda was responsible for documenting and collecting the physical evidence. He testified that the oily substance found in Ms. Haugen's driveway was "literally everywhere," coating the broken glass and large portions of a Dodge Charger which belonged to Theresa Thatcher. The paint on both Ms. Thatcher's car and Ms. Haugen's pickup truck showed discoloration consistent with burn damage from a fire.

While Detective Castaneda was processing the crime scene, other officers located and arrested Petrovich at the home of his ex-wife, Victoria Vorwerk. Police found Petrovich's truck parked in Ms. Vorwerk's back yard with the windows rolled down and a strong odor of gasoline emanating from inside the vehicle. The bed of the truck contained an oily substance similar to what was found at Ms. Haugen's residence.

Forensic analysis of carpet samples taken from the interior of Petrovich's truck and of glass found at the crime scene confirmed the presence of gasoline on each. The tires on the truck matched the size and tread pattern of tracks left near the curb outside of Ms. Haugen's house. Other physical evidence suggesting appellant's involvement in the

offense included empty bottles of Smirnoff vodka and torn strips of clothing found in the garage area of Angela Lewis' apartment.

Ms. Lewis testified against Petrovich at trial. She confirmed that he picked her up from the home of Kellee Clodt on the night of the fire and said he was accompanied by a man named Ricky Caine. The alleged presence of Mr. Caine was consistent with the testimony of Tina Haugen and Theresa Thatcher in that both recalled seeing an unidentified man in Petrovich's vehicle.[3]

Petrovich brought Ms. Lewis to her apartment and stayed there for a short period of time before departing with Mr. Caine. The men returned approximately ten minutes later, at which point Ms. Lewis realized Petrovich had taken a gasoline can from her garage and placed it in the bed of his truck. Petrovich rummaged through her recycling bin, removed a few beer bottles, and left again. Ms. Lewis was concerned about Petrovich's behavior because it appeared he had been drinking and his demeanor seemed "unstable," "violent," and "angry." She further testified that Petrovich had a telephone conversation with someone before leaving her apartment and told the person he was going to "blow up her house."

**Defense Case**

The defense called no witnesses and rested immediately following the conclusion of the prosecution's case-in-chief.

**Verdict and Sentencing**

Petrovich was convicted of using a destructive device and of arson of property belonging to Tina Haugen. The jury deadlocked on the charge of arson of property belonging to Theresa Thatcher, resulting in a mistrial on that count. The unproven arson

---

[3] In a hearing conducted outside the presence of the jury, Mr. Caine advised the trial court that he would invoke his constitutional right against self-incrimination in response to any questions concerning the events of June 27, 2011. After learning of his intentions in that regard, neither side called him as a witness.

charge was subsequently dismissed. The prior conviction allegations were found to be true in a bench trial that followed the jury verdict.

The trial court sentenced Petrovich to a total term of 15 years in prison. His sentence was calculated using the middle term of five years for the offense under former section 12303.3, which was doubled to 10 years as a result of the prior strike (§1170.12, subd. (c)(1)) and extended by five more years for the prior serious felony conviction (§ 667, subd. (a)(1)). A separate four-year sentence was imposed for the arson conviction and stayed pursuant to section 654. Petrovich received 614 days of presentence custody credit based on 410 days of actual time served and 204 days of local conduct credit.

## DISCUSSION

**Admission of Prior Misconduct Evidence**

Appellant challenges the trial court's admission of "uncharged misconduct" evidence. Some of his arguments pertain to matters not specifically at issue in the trial court's in limine ruling, while others are devoted to assertions of federal constitutional error raised for the first time on appeal. For the reasons set forth herein, we find no basis for reversal upon any of the theories presented.

"Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion. [Citations.] This ban against admitting character evidence to prove conduct, however, does not prohibit admission of specific acts of misconduct to establish a material fact like intent, common design or plan, or identity (§ 1101, subd. (b))…." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159.) A trial court's decision to allow evidence of a defendant's prior bad acts for these alternative purposes is reviewed under the abuse of discretion standard. (*People v. Walker* (2006) 139 Cal.App.4th 782, 794.) To the extent the exercise of discretion depends on a proper interpretation of the Evidence Code, we review the legality of the ruling de novo. (*Id*. at p. 795.)

7.

Petrovich and the Attorney General focus their arguments on the admissibility of prior misconduct evidence to prove identity.  For the proponent of such evidence, this can be the most difficult ground upon which to rely under Evidence Code section 1101, subdivision (b) because, as a general rule, "'the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts.'"  (*People v. Harris* (2013) 57 Cal.4th 804, 841 (*Harris*), quoting *People v. Ewoldt* (1994) 7 Cal.4th 380, 403.)  In other words, "[t]he pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature."  (*Ibid*., quotation marks omitted.)

We agree with Petrovich that throwing a Molotov cocktail at his ex-girlfriend's house was not strikingly similar to his alleged misbehavior in the form of verbal threats, forcefully grabbing the victim's arm, or shoving her against a vehicle.  However, as the trial court noted in its pretrial ruling, an exception to the similarity requirement exists when prior misconduct involves the same perpetrator and victim.  "'Where a defendant is charged with a violent crime and has or had a previous relationship with a victim, prior assaults upon the same victim, when offered on disputed issues, e.g., identity, intent, motive, etcetera, are admissible based solely upon the consideration of identical perpetrator and victim without resort to a "distinctive modus operandi" analysis of other factors.'"  (*People v. Kovacich* (2011) 201 Cal.App.4th 863, 893, quoting *People v. Zack* (1986) 184 Cal.App.3d 409, 415 (*Zack*).)

The exception is based on the importance of motive and its close relationship to identity in situations where there is a history of discord between two individuals.  "'In a case where the identity of a person who commits a crime is attempted to be proven by circumstantial evidence, such as in the case at bar, evidence of a motive on the part of a defendant charged is always a subject of proof, and the fact of motive *particularly* material.'"  (*People v. Daniels* (1971) 16 Cal.App.3d 36, 46, original italics, citations omitted.)  "Evidence showing jealousy, quarrels, antagonism or enmity between an

8.

accused and the victim of a violent offense is proof of motive to commit the offense. Likewise, evidence of threats of violence by an accused against the victim of an offense of violence is proof of the identity of the offender." (*Ibid.*, quotation marks and citations omitted; accord, *People v. San Nicolas* (2004) 34 Cal.4th 614, 668.)

In his reply brief, Petrovich claims the "same-victim rule of admissibility" does not apply in this case because he was "not charged with any violent crime against a person or a person's dwelling house." His position is unpersuasive for two reasons. First, the attempt to draw a distinction in this context between property crimes and crimes against the person is unsupported by precedential authority. Second, and more importantly, Petrovich's arguments ignore his conviction under former section 12303.3 for the use of a destructive device.

At the outset of a seven-page discussion about his conviction for arson of property under section 451, subdivision (d), Petrovich inserts a footnote that reads: "[Appellant] was also charged with a simple possession crime. (Pen. Code § 18740 [former § 12303.3].)[.]" This statement is incorrect. Mere possession of a destructive device is proscribed by a different statute, section 18710 (former § 12303), and is a general intent crime punishable as either a misdemeanor (by incarceration in county jail) or a felony (by incarceration in state prison). Petrovich was convicted of an offense defined under section 18740 (former § 12303.3), which is a specific intent crime punishable by a term of three, five, or seven years in prison.

The charge against Petrovich under former section 12303.3 required proof that he possessed, exploded, or ignited a destructive device, or attempted to ignite or explode a destructive device, with the intent to "injure, intimidate, or terrify any person, or with intent to wrongfully injure or destroy any property." (§ 18740; see *People v. Collins* (2010) 49 Cal.4th 175, 218, fn. 15 [quoting the text of former § 12303.3].) It is clear from the record that the prosecution endeavored to prove actual use of a destructive device, rather than possession, and did not limit its theory of mens rea to the intent to

9.

damage or destroy property. Moreover, the offense has traditionally been construed as a crime of violence under all theories of liability. (*People v. DeGuzman* (2003) 113 Cal.App.4th 538, 547; see also, *Townsend, supra,* 182 Cal.App.4th at p. 1155 [describing Molotov cocktails as "classic instruments of violence" with "'no use other than as a weapon.'"].) Therefore, appellant's prior threats and other misbehavior towards Tina Haugen were admissible under Evidence Code section 1101, subdivision (b).

On a separate front, Petrovich complains of two instances where Tina Haugen's testimony contained allegations of prior misconduct in relation to third parties. On cross-examination, Ms. Haugen's answer to a question included the following statement: "He's threatened my ex-husband that he would destroy him." Defense counsel did not object to the response, and thus forfeited any challenge on appeal to the admissibility of her testimony. (Evid. Code, § 353, subd. (a); *People v. Abel* (2012) 53 Cal.4th 891, 924 (*Abel*) ["A defendant who fails to make a timely objection or motion to strike evidence may not later claim that the admission of the evidence was error…."].)

The second instance occurred on re-direct when Ms. Haugen was asked if Petrovich threatened her on the day of the fire. She replied, "Yes, after he told me what he did to his ex-wife." Defense counsel interjected, "Objection, Your Honor. Calls for hearsay; facts not in evidence. Move to strike." When the objection was overruled, the prosecutor asked, "What did the defendant tell you in regards to his ex-wife that you perceived as a threat?" The witness responded, "He had told me that he had hired somebody or had somebody go beat Vicky [Vorwerk] up in the hills pretty badly and that he had two more to go. So I took when he said you are next, I'm one of those."

Petrovich arguably forfeited his challenge to the testimony concerning his ex-wife because the only grounds offered for the objection were hearsay and facts-not-in-evidence. (*Abel*, *supra*, 53 Cal.4th at p. 924 [appellate review of the admission of evidence over an objection is limited to the stated grounds for the objection].) Assuming the issue was preserved, we find no error. Ms. Haugen's testimony was offered to

explain the otherwise ambiguous "You're next" text message sent by Petrovich within hours of the fire. The evidence was admissible to show intent, which is an essential element of the destructive device charge, and proof of intent requires the least degree of similarity between the uncharged act and the charged offense. (*Harris*, *supra*, 57 Cal.4th at p. 841.)

Having determined the challenged evidence was admissible, we next assess the trial court's exercise of discretion under Evidence Code section 352. "The statute requires that the probative value of the evidence must be balanced against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses." (*People v. Culbert* (2013) 218 Cal.App.4th 184, 192, quotation marks omitted.) The trial court's evidentiary rulings will not be disturbed unless it is shown that the court exercised its discretion "'in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Hartsch* (2010) 49 Cal.4th 472, 497.)

The remoteness factor requires no discussion since the alleged acts of misconduct took place within three months of the charged offenses. The danger of juror confusion and undue consumption of time was low given the obvious relevance and significance of Petrovich's turbulent relationship with Tina Haugen. We agree with respondent that the omission of this background information would have left the jury with an unnecessarily incomplete picture of the surrounding circumstances. "Appellant was not entitled to have the jury determine his guilt or innocence on a false presentation that his and the victim's relationship and their parting were peaceful and friendly." (*Zack*, *supra*, 184 Cal.App.3d at p. 415.)

The remaining factor contemplates "whether the evidence of uncharged acts is stronger or more inflammatory than the evidence of the charged offenses." (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1211) On both points, the answer is no. As

probative as the prior misconduct evidence may have been, the physical evidence and eyewitness testimony regarding Petrovich's actions on the day of the crime were far more damaging. It is also highly unlikely that the jury considered the alleged physical altercations and threats against Tina Haugen to be more egregious than the attempt to firebomb her house. For the reasons stated, we conclude the trial court did not act in an arbitrary, capricious, or patently absurd manner by admitting the challenged evidence of prior misconduct.

Petrovich additionally challenges the trial court's evidentiary rulings on constitutional due process grounds. His arguments should be considered forfeited due to his failure to object on the same basis at trial. (Evid. Code, § 353, subd. (a).) Regardless, the claim fails because "[f]ederal due process rights are not implicated where the disputed evidence is relevant and admissible to show intent, motive, [and/or] identity" under Evidence Code section 1101, subdivision (b). (*People v. Arauz* (2012) 210 Cal.App.4th 1394, 1403; accord, *People v. Foster* (2010) 50 Cal.4th 1301, 1335; see also, *People v. Jones* (2013) 57 Cal.4th 899, 957 ["[T]he routine application of provisions of the state Evidence Code law does not implicate a criminal defendant's constitutional rights."].) The absence of error under state law is dispositive of the issue.

**Alleged Prosecutorial Misconduct**

Defense counsel below interposed a series of objections during the prosecution's closing argument. Petrovich renews these objections on appeal, arguing the prosecutor committed "egregious misconduct" in violation of his rights under state and federal law.

Background

The following transcript excerpts reflect the alleged instances of misconduct.

"MR. WELCH [the prosecutor]: If you believe that the defendant is guilty, even if you are not sure or wish that you had something more to be sure, absolutely certain, your job is done. You have –

"MR. TERRY [defense counsel]: Your Honor, I'm going to object. That misstates the law.

"THE COURT: Well, all right. What I'm going to do, if you could equate that to the standard of proof, Mr. Welch, just so it is clear.

"MR. WELCH: [If] you have been convinced by the evidence presented in court that the defendant is guilty, and more, you are required to find the defendant guilty. You will have some questions –

"MR. TERRY: Your Honor, I'm going to again object. That misstates the standard of proof. I apologize.

"THE COURT: Obviously, the standard of proof is proof beyond a reasonable doubt. Everybody understands that, ladies and gentlemen. That is an instruction. In terms of proving the defendant guilty, the People are required to prove it beyond a reasonable doubt. Everybody understands that. Go ahead, Mr. Welch.

"MR. WELCH: … and another thing is you can't disregard evidence. You have to view all of the evidence and weigh every piece of evidence. You can't just disregard a piece of evidence because it does not fit into a possible doubt.

"MR. TERRY: Your Honor, again, I'm going to have to object. That misstates the law.

"THE COURT: All right. Well, I understand what you are saying, Mr. Welch, but I guess technically if the instructions tell them if – for example, if they don't believe someone, they can disregard what they said entirely, so to that extent, I agree with Mr. Terry, but I don't think that is what you are intending to say. I'll sustain the objection in that regard. It wasn't that clear."

Applicable Law

It is improper for a prosecutor to misstate the law, especially if done in an attempt to lower the burden of proof. (*People v. Hill* (1998) 17 Cal.4th 800, 829.) "'"'A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution

13.

when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." When a claim of misconduct is based on the prosecutor's comments before the jury, as all of [the] defendant's claims are, "'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'"" (*People v. Linton* (2013) 56 Cal.4th 1146, 1205, citations omitted.)

Analysis

The prosecutor's initial statement regarding the burden of proof appears to have been an inartful attempt to distinguish the concept of "beyond a reasonable doubt" from the need to achieve absolute certainty of guilt. The second statement was also clumsily worded, and did not fully explain the law, but the basic message was correct: If a jury is convinced by the evidence of the defendant's guilt, it should return a guilty verdict. (See CALCRIM No. 220 [Reasonable doubt].) As for telling the jury it should not disregard evidence, CALCRIM No. 220 instructs that jurors "must impartially compare and consider all the evidence that was received throughout the entire trial." (*Ibid*.) From that perspective, the prosecutor's statement had merit, although the trial court correctly noted the possibility for confusion.

Insofar as the prosecutor may have misstated the law, the trial court's immediate clarification and other standard instructions were presumably sufficient to cure any danger of prejudice. The topics covered by the challenged portions of argument were addressed accurately and completely by the trial court in its oral and written instructions, including the standard of proof (CALCRIM No. 220), evidence (CALCRIM No. 222), assessment of witnesses and the jury's right to believe all, part, or none of their testimony (CALCRIM No. 226), and evaluating conflicting evidence (CALCRIM No. 302). The court also admonished the jury with the following language from CALCRIM No. 200:

14.

"You must follow the law as I explain it to you, even if you disagree with it.  If you believe the attorneys' comments on the law conflict with my instructions, you must follow my instructions."

Jurors are presumed to be intelligent persons """"capable of understanding and correlating all jury instructions which are given.""""  (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)  In the absence of an affirmative showing to the contrary, which Petrovich has not made, we must presume the jury followed the trial court's instructions and disregarded any incorrect statements of law by the prosecutor that conflicted with those instructions.  (*People v. Anzalone* (2013) 56 Cal.4th 545, 557; *People v. Osband* (1996) 13 Cal.4th 622, 717; see also, *Weeks v. Angelone* (2000) 528 U.S. 225, 234 ["A jury is presumed to follow its instructions."].)  Thus, there is no basis upon which to conclude that the prosecutor's remarks infected the trial with unfairness or were applied by jurors in an erroneous manner.

**Cumulative Error**

In light of the foregoing analysis, in which we have found no abuse of discretion in the trial court's evidentiary rulings and no merit to the claim of prosecutorial misconduct, we reject appellant's contention that the cumulative effect of all errors requires reversal.

**Calculation of Presentence Conduct Credits**

Under California law, a criminal defendant is entitled to credit against their sentence for all days spent in custody while awaiting trial and/or sentencing.  (§ 2900.5, subd. (a); *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48 (*Rajanayagam*).)  Custody credit is calculated from the date of arrest through the time of sentencing.  (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 48.)  Section 4019 provides for additional presentence credits based on work time and good behavior, collectively referred to as "conduct credit," and specifies the rate at which such credit can be earned.  (§ 4019, subds. (a), (b) & (c); *People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.)

15.

"In conjunction with the '2011 Realignment Legislation addressing public safety,' section 4019 was amended to provide for deductions for every four days of confinement, so that if all possible days are earned, four days will now be deemed served for every two days of actual confinement." (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1549 (*Ellis*), internal citations omitted). This formula applies "to prisoners who are confined to a county jail … for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).)

Petrovich was arrested on June 27, 2011 and remained in custody until he was sentenced on August 10, 2012. Accordingly, the trial court gave him credit for 410 days of actual custody plus 204 days of conduct credit calculated at the rate in effect at the time of his offenses (i.e., the date of his arrest). Petrovich argues his conduct credits for the time period between October 1, 2011 and August 10, 2012 should have been calculated under the current formula set forth in section 4019, and claims the failure to apply the statute in this manner violates his constitutional equal protection rights.

We have rejected the same arguments made by Petrovich in prior decisions, including our published opinion in *People v. Ellis*, *supra*, 207 Cal.App.4th 1546. There we concluded: "In our view, the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. [Citation.] The second sentence [of section 4019, subdivision (h)] does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits." (*Ellis*, *supra*, 207 Cal.App.4th at p. 1553.) The *Ellis* opinion further holds that such a construction of the statute does not result in an equal protection violation. (*Id*. at pp. 1549-1551.) Other districts have followed *Ellis* and/or reached the same conclusion. (See, e.g., *People v. Ramirez* (2014) 224 Cal.App.4th 1078, 1086 [Sixth District, citing *Ellis*]; *People v. Miles* (2013) 220 Cal.App.4th 432, 435-436 [Second District]; *Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 55-56 [Fourth District];

*People v. Kennedy* (2012) 209 Cal.App.4th 385, 396-399 [Sixth District, independent equal protection analysis].)

Petrovich acknowledges the growing list of authorities contra to his position, but asks that we overrule *Ellis* and disapprove of all cases that share the same view. We decline to do so.

## DISPOSITION

The judgment is affirmed.

_____
Gomes, J.

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Peña, J.