Filed 2/7/23  P. v. Nixon CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| THE PEOPLE, | B315453 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A648471) |
| v. | |
| LEONARD RAY NIXON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Allen J. Webster, Judge. Affirmed.

Richard Lennon and Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

**INTRODUCTION**

Leonard Ray Nixon was convicted in 1993 of first degree murder and other crimes relating to the death of a two-year-old child, Dionsa Moore. The jury found true special circumstance allegations Nixon committed the murder by means of a destructive device and while engaged in the commission of arson. The trial court instructed the jurors that, to find the special circumstance allegations true, they had to find beyond a reasonable doubt that Nixon was the actual killer or that he either intended to kill a human being or, with knowledge of the unlawful purpose of the actual killer, intended to aid and abet another in killing a human being.

In 2019 Nixon filed a petition for resentencing under Penal Code section 1172.6[1] (former section 1170.95). After this court reversed the superior court's order summarily denying Nixon's petition, the superior court again ruled Nixon failed to make a prima facie showing he was entitled to relief, in part because the court concluded the jury, by finding the special circumstance allegations true, necessarily found Nixon was the actual killer or had the intent to kill.

In this appeal Nixon argues that the trial court improperly engaged in factfinding when the court determined he failed to make a prima facie showing of eligibility under section 1172.6 and that the jury's true findings on the special circumstance allegations did not establish he is ineligible for relief as a matter of law. Nixon also argues a statement in the opinion by (a different division of) this court in his direct appeal, that the evidence did not support that Nixon had an intent to murder, was

---

[1]     Statutory references are to the Penal Code.

2

binding on the superior court as the law of the case or because of issue preclusion.  We affirm.

## FACTUAL AND PROCEDURAL  BACKGROUND

A.      *A Jury Convicts Nixon of First Degree Murder and Finds True Two Special Circumstance Allegations*

Late one night in July 1988 Lisa Lee was preparing to put her son Dionsa to bed in the front bedroom of her home when the bedroom window broke.  (*People v. Nixon* (July 8, 1994, B067902) [nonpub. opn.] (*Nixon I*).)  Two objects came through the window and ignited the bed, engulfing Dionsa in flames.  He died from his injuries.

The People filed a five-count information against Nixon and his accomplices,  Anthony Snead and Sekou Thompson.  At Nixon's trial Detective Joe Callian of the Los Angeles Police Department testified that, after he read Nixon his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602], Nixon said that on the evening in question Snead told Nixon he was going to "'cocktail [Lee's] house'" to recover a gold chain Lee's sister (and Snead's ex-girlfriend) had taken.  Nixon initially declined to go to Lee's house, but changed his mind.  Nixon stated that, as he got into the car with Snead and Thompson,  Snead picked up a couple of empty 40-ounce beer bottles from the ground.  Thompson drove the three men to a gas station where Nixon said Snead filled the bottles with gasoline.  Thompson drove them to another gas station to get matches.

Nixon told Detective Callian that when the three men arrived at Lee's house he and Snead got out of the car and stood in front of the house.  Nixon said he lit a book of matches as

Snead lit and threw a "Molotov cocktail."[2]  Nixon stated that he threw the Molotov cocktail he was holding, but that he did not know whether it went inside the house.  Nixon told the detective that he and Snead went back to the car, and Thompson drove them away.

A jury convicted Nixon of first degree murder (§ 187, subd. (a); count 1), arson causing great bodily injury (§ 451, subd. (a); count 2), arson of an inhabited structure or property (§ 451, subd. (b); count 3), and exploding or igniting a destructive device or explosive causing death (former § 12310, now § 18755, subd. (a); count 4).  The jury also found true allegations Nixon committed the murder by means of a destructive device, within the meaning of section 190.2, subdivision (a)(6), and while engaged in committing the crime of arson, within the meaning of section 190.2, subdivision (a)(17).  The trial court sentenced Nixon to two prison terms of life without the possibility of parole on counts 1 and 4, and concurrent prison terms of seven and six years, respectively, on counts 2 and 3.  Another division of this court affirmed the judgment on direct appeal.  (*Nixon I, supra,* B067902.)

B.     *The Superior Court Twice Denies Nixon's Petition for Resentencing Under Section 1172.6*

In July 2019 Nixon filed a petition for resentencing under section 1172.6.  Nixon alleged that he was convicted of first degree murder under a theory of felony murder or under a natural and probable consequences doctrine and that he could not

---

[2]     A Molotov cocktail "is a bottle filled with a flammable liquid with a wick or rag which acts as a fuse to ignite [the] device."  (*People v. Townsend* (2010) 182 Cal.App.4th 1151, 1155.)

now be convicted of murder because of legislative changes to sections 188 and 189.  The People opposed the petition and argued Nixon was the actual killer, aided and abetted the actual killer with the intent to kill, or was a major participant in the underlying felonies and acted with reckless indifference to human life.  The superior court summarily denied the petition based on facts of the case drawn from this court's opinion in Snead's direct appeal, *People v. Snead* (1993) 20 Cal.App.4th 1088, disapproved in *People v. Letner and Tobin* (2010) 50 Cal.4th 99 (*Letner and Tobin*).  Nixon appealed.  We reversed and directed the superior court to reconsider Nixon's petition in light of his (as opposed to Snead's) record of conviction.  (*People v. Nixon* (January 26, 2021, B304463) [nonpub. opn.] (*Nixon II*).)

The superior court set another hearing to determine whether Nixon had made a prima facie showing of eligibility for relief under section 1172.6.  Nixon argued that he was not the actual killer because his Molotov cocktail landed on the porch and did not cause Dionsa's death, that the evidence did not show beyond a reasonable doubt he aided and abetted Dionsa's murder with the intent to kill, and that he did not act as a major participant or with reckless indifference to human life.  The People argued Nixon was ineligible for relief under section 1172.6 as a matter of law because the jury, in finding the special circumstance allegations true, found Nixon was either the actual killer or had the intent to kill when he aided and abetted the murder.

At the hearing counsel for Nixon conceded the jury instructions for the special circumstance allegations "said that the jury had to find intent to kill," but he argued there was no evidence to support the jury's true findings.  Counsel for Nixon

5

argued the jury reached "an emotional verdict based on the age of the victim and the manner of death and not on law and fact." In other words, counsel for Nixon conceded the jury "did find under that special circumstance that Mr. Nixon intended to kill," but argued the evidence did not support that finding.

The People argued the only way for the jury to have found the special circumstance allegations true was to find that Nixon was the actual killer or that he directly aided and abetted Snead with the intent to kill. Consequently, the People argued, Nixon was ineligible for relief under section 1172.6 as a matter of law because he could still be convicted of first degree murder under current law.

The superior court concluded the People's "assessment" was "accurate." The court also stated that Nixon was culpable for Dionsa's murder and that he "certainly had the intent to kill" because "what other kind of intent can be formulated from throwing a Molotov cocktail, more than one, into a house. Whether [Nixon] was successful in throwing [the bottle] into the house or not, . . . the intent surely was to throw it into the house and start a fire in the house. . . . Everything would suggest . . . that if Mr. Nixon was not the actual killer, he certainly had the intent to kill and was aiding and abetting and part of this whole conspiracy . . . . So I just don't think that he's made a prima facie case." The superior court denied the petition, and Nixon timely appealed.

## DISCUSSION

A.     *Section 1172.6*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder, eliminating the

natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)). Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e). The latter provision requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); that the defendant, though not the actual killer, with the intent to kill assisted in the commission of the murder (§ 189, subd. (e)(2)); or that the defendant was a major participant in a felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision. (§ 189, subd. (e)(3); see *Strong*, at p. 708; *Gentile*, at pp. 842-843.)

Section 1172.6 authorizes an individual convicted of felony murder or murder based on a natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of the changes the Legislature made to the definitions of the crime. (See *People v. Strong*, *supra*, 13 Cal.5th at p. 708; *Lewis*, *supra*, 11 Cal.5th at p. 957; *People v. Gentile*, *supra*, 10 Cal.5th at p. 843.) If a petition under section 1172.6 contains all the required information, the court must appoint counsel to represent the petitioner if requested. (*Lewis*, at pp. 962-963; see § 1172.6, subd.

7

(b)(1)(A), (3).)  The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (§ 1172.6, subd. (c).)

"[T]he prima facie inquiry under [section 1172.6,] subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'  [Citation.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citation.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'"  (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *People v. Harden* (2022) 81 Cal.App.5th 45, 51-52.)

"The record of conviction may include the underlying facts as presented in an appellate opinion, the trial evidence, the jury instructions, and closing arguments of counsel.  [Citation.]  However, 'the probative value of an appellate opinion is case specific, and "it is certainly correct that an appellate opinion might not supply all answers."'"  (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13-14; see *Lewis*, *supra*, 11 Cal.5th at p. 972; *People v. Ervin* (2021) 72 Cal.App.5th 90, 99, 102 (*Ervin*).)  "In reviewing any part of the record of conviction at this preliminary juncture, a [superior] court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'  [Citation.]  . . .  [T]he 'prima facie bar was intentionally and

correctly set very low.'" (*Lewis*, at p. 972; see *People v. Harden*, *supra*, 81 Cal.App.5th at p. 51.)

On appeal from an order denying a petition under section 1172.6 on the ground the defendant failed to make a prima facie showing for relief, we review de novo whether the petitioner is ineligible for relief as a matter of law. (*People v. Lopez, supra*, 78 Cal.App.5th at p. 14; *Ervin, supra*, 72 Cal.App.5th at p. 101.) "A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*Lopez*, at p. 14; see §§ 188, subd. (a)(3), 189, subd. (e).)

B.    *Any Improper Factfinding Was Harmless*

Nixon argues that, "rather than adopt the prosecution's argument that [he] was ineligible as a matter of law based on the true findings on the special circumstances," the superior court "engaged in improper fact-finding to deny relief at the prima facie stage." The superior court actually did both. The court first adopted the prosecution's assessment of the petition. The only "assessment" the prosecutor provided was that, "because the jury found that [Nixon was] either the actual killer or that he acted with the intent to kill, he's legally ineligible for relief."

9

But the court went on to find facts to support its conclusion Nixon failed to make a prima facie showing for relief because he "had the intent to kill and was aiding and abetting and part of this whole conspiracy." Any error, however, was harmless because the court accepted the prosecutor's argument, which did not require improper factfinding, and because we independently conclude Nixon is ineligible for relief under section 1172.6 as a matter of law. (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864 [error in denying a section 1172.6 petition is harmless where the record of conviction establishes the petitioner is ineligible for relief under section 1172.6 as a matter of law].)

C. *Nixon Is Ineligible for Resentencing as a Matter of Law*

Nixon argues his record of conviction does not make him ineligible for resentencing under section 1172.6 as a matter of law because the trial court's jury instructions on the special circumstance allegations did not require the jury to find that he was the actual killer or that he aided and abetted the actual killer with the intent to kill. Nixon, however, forfeited this argument by failing to make it in the superior court and, indeed, by conceding in the superior court the jury instructions on the special circumstance allegations required the jury to find he had the intent to kill. (See *People v. Schell* (2022) 84 Cal.App.5th 437, 444 [petitioner forfeited a theory for relief in support of his petition under section 1172.6 by not raising it in the superior court]; *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 238-239 [petitioner forfeited the argument the superior court erred in admitting victim impact testimony before ruling on his petition under section 1172.6 because the petitioner acquiesced in the

10

superior court's decision to hear the statements].) But because the question whether Nixon is ineligible for relief under section 1172.6 as a matter of law is a purely legal question, and "to avert any claim of inadequate assistance of counsel" (*People v. Watson* (2021) 64 Cal.App.5th 474, 483), we exercise our discretion to address his argument on the merits.

### 1.    *Additional Relevant Proceedings*

The trial court instructed the jury on three theories of first degree murder: the unlawful killing of a human being, whether intentional or unintentional, or accidental, that occurs during the commission or attempted commission of the crime of arson (i.e., felony murder); murder perpetrated by means of a destructive device or explosive with malice aforethought; and co-conspirator liability for the killing of another in furtherance of a conspiracy to commit arson or the unlawful use of a destructive device. The court also instructed the jury on liability for direct aiding and abetting felony murder: "If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of arson, a person who either directly and actively commit[ted] the act constituting [arson], or who with knowledge of the unlawful purpose of the perpetrator of the crime, and with the intent or purpose of committing, encouraging, or facilitating the commission of [arson] aids, promotes, encourages, or instigates by act or advice its commission, [is] guilty of murder of the first degree whether the killing is intentional, unintentional, or accidental." The court instructed the jurors they need not agree on which theory of first degree murder applied, so long as each of them was convinced beyond a reasonable doubt at least one theory applied. The court did not

11

instruct the jury on a natural and probable consequences theory of first degree murder.

On the special circumstance allegations, the trial court instructed the jury with a modified version of CALJIC No. 8.80: "If you find the defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following special circumstances are true or not true: murder perpetrated by a destructive device and murder in the commission of arson. The People have the burden of proving the truth of the special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true. If you find beyond a reasonable doubt that the defendant was either the actual killer, a co-conspirator, [or] an aider or abettor, but you are unable to decide which, then you must also find beyond a reasonable doubt that the defendant *intended* either *to kill a human being*, *or* with knowledge of the unlawful purpose of the actual killer[,] *to aid and abet another in the killing of a human being* in order to find the special circumstance to be true. On the other hand, if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true." (Italics added.)

In his closing argument, the prosecutor acknowledged Nixon could be guilty of felony murder and as a co-conspirator without having the intent to kill. The prosecutor argued, however, that only one set of facts supported a conviction for first degree murder: Nixon threw one of two Molotov cocktails that landed inside Lee's house. The prosecutor pointed to Lee's testimony that she saw "the second one flying in" and the physical evidence suggesting Nixon's Molotov cocktail landed

12

inside the house.  The prosecutor argued the Molotov cocktail Nixon threw "was the dual proximate cause of the death of the child."  The prosecutor never suggested Nixon could be liable for murder solely as an aider and abettor or as a co-conspirator under some alternative scenario.

In connection with the special circumstance allegations, the prosecutor argued that "two firebombs . . . led directly to the death of Dionsa" and that Nixon threw one of them.  "As the actual killer," the prosecutor continued, "no intent to kill has to be shown" for the jury to find the special circumstance allegations true.  The prosecutor argued in the alternative that, "in spite of the fact that [Nixon] is the actual killer, . . . he also had the intent to kill."  The prosecutor listed circumstances that would enable the jurors to find Nixon had the intent to kill when he threw his Molotov cocktail, including that Nixon went to Lee's home after midnight with "fully loaded bombs," when lights were on in the home (including in the front room), and where there were cars parked in the driveway.  The prosecutor recounted testimony from Lee and her sister that a person standing outside the house at night could see shadows of people in the front room when the lights were on inside, even through drawn shades.

Counsel for Nixon told the jury there was no evidence Nixon "intended to kill anyone."  For the most part, however, counsel for Nixon argued that Nixon's statements to Detective Callian were coerced and manipulated, that Snead and Thompson implicated Nixon as the "village idiot" (because of evidence Nixon had a "borderline" intellectual disability), and that only one bottle, not two, was thrown at Lee's house (which suggested Nixon did not throw a Molotov cocktail and might not have even been present when Snead threw his).

13

In rebuttal, the prosecutor recounted details from Nixon's statement to Detective Callian that only a participant in the arson and murder would know. Regarding the special circumstance allegations, the prosecutor reiterated that Nixon was the actual killer or he had the intent to kill, either one of which supported a true finding on the special circumstance allegations. The prosecutor said that "if there are two bottles, both leading to the cause of death, each [thrower] is equally responsible for having caused the death, which makes him the actual killer." "[I]n the alternative," the prosecutor argued, "clearly anybody that would throw a Molotov cocktail into a lit and occupied room, with the knowledge of what a 40-ounce gasoline bottle would do when it hit as it was ignited, could have nothing but the intent to kill the person or persons that occupied that room. It is a lit room. It is an occupied room. It is also a house in the middle of the night where cars are parked in the driveway, and he chose the one occupied room, along with Mr. Snead, to launch his bottles into."

2. *By Finding the Special Circumstance Allegations True, the Jury Found Nixon Had the Intent To Kill*

CALJIC No. 8.80 as given by the trial court required the jury, before finding a special circumstance allegation true, to find that Nixon was the actual killer, that he intended to kill, or that he intended to aid and abet another in the killing of a human being (with knowledge of the unlawful purpose of the actual killer). Nixon argues the instruction as given was ambiguous in several ways and allowed the jury to find the special

14

circumstance allegations true "without finding that he was the actual killer or personally harbored the intent to kill."

To determine whether a jury instruction conveyed a legally inadequate theory, we consider ""whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction."" (*People v. O'Malley* (2016) 62 Cal.4th 944, 994; see *Letner and Tobin*, *supra*, 50 Cal.4th at p. 182 [where the defendant contends a jury instruction is ambiguous, the reviewing court considers whether there is a "reasonable likelihood the jury misunderstood or misapplied" the challenged instruction in the way defendant asserts].) In evaluating whether there is a reasonable likelihood the jury misunderstood or misapplied a given instruction, we consider the instructions as a whole and the arguments of counsel in the context of the case. (*People v. Miles* (2020) 9 Cal.5th 513, 582-583; *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 646; *O'Malley*, at p. 994; *Letner and Tobin*, at pp. 182-183; *People v. Young* (2005) 34 Cal.4th 1149, 1202; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1255-1256; *Ervin*, *supra*, 72 Cal.App.5th at pp. 109-110; *People v. Bell* (2020) 48 Cal.App.5th 1, 16.)

Several courts have found versions of CALJIC No. 8.80 ambiguous regarding the intent required of an aider and abettor or a co-conspirator. (See *People v. Beck and Cruz, supra,* 8 Cal.5th at pp. 646-647; *People v. O'Malley, supra,* 62 Cal.4th at p. 994; *Letner and Tobin, supra,* 50 Cal.4th at p. 182; *Ervin, supra,* 72 Cal.App.5th at pp. 107-109.) For example, in *Letner and Tobin* the Supreme Court held the version of CALJIC No. 8.80 given in that case was ambiguous because (1) the instruction told the jury "that if it determined one of [two] defendants was the actual killer, intent to kill was not required,"

(2) the instruction also told the jury that "if it could not decide whether one of the defendants was the actual killer or an aider and abettor, it must find intent to kill in order to make a true finding," but (3) if the jury determined the defendant was an aider and abettor, the instruction did not inform the jury of the state of mind that was required (i.e., the intent to kill). (See *Letner and Tobin*, at p. 181.) The Supreme Court stated, however, that "the jury *could* draw from the instruction as a whole the inference that an aider and abettor was required to have an intent to kill" and that "the prosecutor presented a correct and complete statement of the law in her arguments following the trial court's instructions." (*Id.* at p. 182.) As a result, the Supreme Court concluded that, "despite the ambiguity in the instruction, there is no reasonable likelihood that the jury found one defendant was the actual killer, and then based its special circumstance findings as to the other defendant upon an erroneous notion that an aider and abettor need not possess the intent to kill." (*Id.* at p. 183; see *Beck and Cruz*, at pp. 646-647 [no reasonable likelihood the jury found a special circumstance allegation true under CALJIC No. 8.80 without finding an aider and abettor or co-conspirator had the intent to kill because "the prosecutor did not argue that the jury need not find intent to kill as to either [defendant]"]; *O'Malley*, at p. 994 [no reasonable likelihood the jury misinterpreted or misapplied CALJIC No. 8.80 because "the prosecutor did not argue that the instruction permitted the jury to find the special circumstance true on the theory that defendant was a nonperpetrator who lacked the intent to kill; rather, he argued that whether or not defendant was the actual killer," he had the intent to kill].)

16

Citing *Letner and Tobin*, *supra*, 50 Cal.4th 90, Nixon argues CALJIC No. 8.80 as given did not sufficiently inform the jury "what was required in the event the jury determined that a particular defendant was an aider and abettor," as opposed to the actual killer. Although the version of CALJIC No. 8.80 the trial court gave did not make the requisite intent of an aider and abettor (or a co-conspirator) "'unmistakable'" (*Letner and Tobin*, at p. 182), the prosecutor in Nixon's trial clearly informed the jurors that, to find the special circumstance allegations true, they had to find that Nixon was the actual killer or that he had the intent to kill. The prosecutor's theory of the case and argument to the jury was that Nixon (along with Snead) was the actual killer or that, based on evidence he threw a lit firebomb into an occupied house at night, Nixon at a minimum had the intent to kill. The prosecutor never suggested Nixon did not have the intent to kill or that the jury could find true the special circumstance allegations without finding Nixon was the actual killer or had the intent to kill. (See *People v. O'Malley*, *supra*, 62 Cal.4th at p. 994 [it was not reasonably likely the jury misinterpreted or misapplied CALJIC No. 8.80 where the prosecutor never suggested to the jury the possibility the defendant's accomplice intended to kill the victim and the defendant did not but nevertheless assisted the actual killer in carrying out the crime]; *People v. Bedolla* (2018) 28 Cal.App.5th 535, 548 ["it was not reasonably likely that the jury misunderstood or misapplied the challenged instructions" where "the prosecutor's closing argument . . . reinforced a correct understanding of the instructions"].)

Nixon also cites *Ervin*, *supra*, 72 Cal.App.5th 90, where the court held a jury's true finding on a special circumstance

allegation did not establish the petitioner was ineligible for relief under section 1172.6.  (*Ervin*, at p. 110.)  Although the court in the underlying trial in that case instructed the jury with a version of CALJIC No. 8.80 similar to the version the trial court gave in Nixon's trial, the prosecutor in *Ervin* "on at least three occasions . . . appeared to conflate the felony-murder special-circumstance allegation with the former felony-murder rule." (*Ervin*, at p. 110.)  For example, the prosecutor in the trial in *Ervin* stated that "if you find that a [felony] happened and somebody was killed during the commission of it, that's all that matters as far as the special circumstance finding."  (*Id*. at p. 109, italics omitted.)  In addition, the jury in the *Ervin* trial found not true an allegation the petitioner personally used a firearm in the commission of murder, despite the prosecutor's theory he was the actual shooter.  (*Id*. at p. 104.)  Thus, the court in *Ervin* held, "given the prosecutor's closing argument and the jury's inconsistent verdicts" finding the petitioner guilty of first degree murder but finding not true the allegation he personally used a firearm in the commission of the murder, it was "possible the jurors misinterpreted [CALJIC No. 8.80] to mean they could find the felony-murder special-circumstance allegation true if they generally found [the petitioner] aided and abetted another in the commission of the robbery or burglary (that ultimately led to the killing of a human being), rather than a more specific finding that [the petitioner] aided and abetted 'the actual killer . . . with the intent to kill.'"  (*Ervin*, at pp. 108-109.)  Neither of those circumstances occurred in Nixon's trial.

Nixon also argues CALJIC No. 8.80 as given, which told the jurors they could find the special circumstance allegations true if they found Nixon "with knowledge of the unlawful purpose of the

18

actual killer" aided and abetted another in the killing of a human being, allowed the jury to find the special circumstance allegations true if the jurors found Nixon "had knowledge the actual killer intended to commit an arson and aided and abetted another in the commission of the arson that ultimately led to the killing of a human being," but did not have the intent to kill. In a similar argument Nixon contends the version of CALJIC No. 8.80 given did not tell the jurors they had to find Nixon "had knowledge the actual killer *intended to kill and shared that intent*. Under this instruction, the jury could have found that [Nixon] had knowledge the actual killer intended to throw a Molotov cocktail into the house and aided and abetted him in doing this act. This is not the intent to kill."

But the instruction stated that the jury had to find Nixon had knowledge of the unlawful purpose of the "actual killer," not merely knowledge of an arsonist, and that Nixon had to have intended to aid and abet another "in the killing of a human being," not in committing arson that led to the death of a human being. And the prosecutor never suggested (as the prosecutor did in *Ervin*) that, for the jury to find the special circumstance allegations true, Nixon need only have intended to commit arson, as opposed to the killing of a human being. Instead, the prosecutor told the jurors that, to find the special circumstance allegations true, they had to find Nixon was the actual killer or had the intent to kill.

Moreover, although it is conceivable the jury in Nixon's trial could have interpreted "with knowledge of the unlawful purpose of the actual killer" to mean Nixon merely knew Snead intended to commit arson, that interpretation does not negate the requirement that the jury also find Nixon, if he was not the

19

actual killer, "intended either to kill a human being or . . . to aid and abet another in the killing of a human being." Because the jury necessarily found Nixon had the intent to kill, he is ineligible as a matter of law for relief under section 1172.6.

> 3. *By Finding the Special Circumstance Allegations True, the Jury Found Nixon, at a Minimum, Aided and Abetted the Actual Killer*

Nixon argues the version of CALJIC No. 8.80 the trial court gave required only that Nixon aid and abet "another" in the killing of a human being. As a result, Nixon argues, it is possible the jury might not have convicted him of first degree murder under the current felony-murder rule, which requires a finding the defendant, "with the intent to kill, aided, abetted, . . . or assisted *the actual killer* in the commission of murder in the first degree." (§ 189, subd. (e)(2), italics added.) This argument fails.

Nixon again relies on *Ervin*, *supra*, 72 Cal.App.5th 90, where the court reversed an order finding the petitioner was ineligible for resentencing under section 1172.6 because the jury instructions in the petitioner's trial allowed the jury to find a special circumstance allegation true so long as the petitioner aided and abetted "another" in the killing of a human being, but not necessarily the actual killer. (*Ervin*, at pp. 107-109.) In *Ervin*, however, the petitioner participated in an armed robbery with two other, separately tried defendants, either one of whom might have been the actual killer. (See *id.* at pp. 94, 96.) Here, the only other person who could have actually killed Dionsa was Snead (because Thompson did not throw a Molotov cocktail), and the People's theory of the case was that Nixon was either an actual killer (along with Snead) or that he aided and abetted

20

Snead by throwing a Molotov cocktail at the house.  Snead was the only possible "other."  The jury could not have misapplied or misinterpreted  CALJIC No. 8.80 as Nixon suggests.

D.     *The Court's Opinion in* Nixon I *Did Not Negate the Jury's Finding Nixon Intended To Kill*

Nixon argues the court's opinion in *Nixon I* precluded the superior court from ruling he is ineligible for relief under section 1172.6 under the law of the case doctrine and issue preclusion.  Nixon relies on the statement in the court's opinion in *Nixon I* that the "evidence in the case at bench provides no support for Nixon's intent to murder."

1.     *Nixon's Contentions in* Nixon I

In *Nixon I* the court addressed Nixon's contention the trial court "[e]rroneously failed to instruct the jury that arson felony murder and arson special circumstance were not applicable if [Nixon's] intent in starting the fire was to kill."  Nixon also contended the trial court erred in instructing the jury that throwing an item constituted delivery for purposes of the special circumstance allegation of murder by a destructive device.  Nixon did not argue substantial evidence did not support the jury's true findings on the special circumstance allegations.  (*Nixon I*, *supra*, B067902.)

Here's the background:  In *People v. Clark* (1990) 50 Cal.3d 583 the Supreme Court held a jury could not find true a felony-murder arson special circumstance allegation unless the defendant had an "independent purpose" for committing arson that was not incidental to the murder.  (*Id*. at p. 608; see *People*

*v. Green* (1980) 27 Cal.3d 1, 61-62 (*Green*).)[3] Citing *Clark*, Nixon argued in *Nixon I* the trial court should have instructed the jury sua sponte that, to find the felony-murder arson special circumstance true, "it must be proved that the murder was committed in order to carry out or advance the commission of the crime of arson or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the arson was merely incidental to the commission of the murder." The court in *Nixon I* held the trial court did not err in failing to give that instruction sua sponte because "[t]he evidence . . . provide[d] no support for Nixon's intent to murder." The court in *Nixon I* stated: "Where no evidence indicates that [Nixon's] sole purpose at the inception of the plan to 'cocktail' the house was murder, an instruction based on the *Green* doctrine cannot be called a general principle of law closely and openly connected with the facts to the court, and no sua sponte duty to instruct arose." (*Nixon I, supra*, B067902.)

2.     *Neither Law of the Case nor Issue Preclusion Negates the Jury's True Findings on the Special Circumstance Allegations*

"'Where an appellate court states in its opinion a principle of law necessary to the decision, that principle becomes law of the case and must be adhered to in all subsequent proceedings . . . under the doctrine of the law of the case, the case may *not* go

---

[3] Effective March 7, 2000, amended section 190.2, subdivision (a)(17)(M), eliminated the independent felonious purpose requirement for the arson special circumstance. (*People v. Brents* (2012) 53 Cal.4th 599, 609, fn. 4.)

over ground that has been covered before in an appellate court.' [Citation.]  This doctrine, however, 'does not extend to points of law which might have been but were not presented and determined on a prior appeal.'" (*People v. Gonzalez* (2021) 65 Cal.App.5th 420, 434; see *People v. Gray* (2005) 37 Cal.4th 168, 196-197; *People v. Hernandez* (2021) 60 Cal.App.5th 94, 110, fn. 7.)  Issue preclusion similarly "'precludes relitigation of issues argued and decided in prior proceedings.'" (*Gonzalez*, at p. 433.) "'Traditionally, we have applied the doctrine [of issue preclusion] only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.'" (*Id.* at pp. 433-434; accord, *People v. Jones* (2022) 86 Cal.App.5th 1076, 1085.)  Thus, for either the law of the case doctrine or issue preclusion to apply, a court must have actually considered and decided the issue.

That did not happen here.  The court in *Nixon I* did not consider whether the jury necessarily determined Nixon had an intent to kill, nor did the court consider whether substantial evidence supported the jury's true findings on the special circumstance allegations.  Nixon challenged only the instructions the trial court gave and failed to give on the arson special circumstance allegation, and the court's opinion in *Nixon I* left the jury's true findings on the special circumstance allegations intact.  Indeed, the court in *Nixon I* found only that the evidence

23

did not indicate Nixon's "*sole* purpose at the inception of the plan to 'cocktail' the house was murder." (*Nixon I*, *supra*, B067902, italics added.)

We acknowledge that the court in *Nixon I* also stated "[t]he evidence . . . provide[d] no support for Nixon's intent to murder," which at first glance seems inconsistent with the jury's finding that Nixon had an intent to kill. The significance of the court's statement in *Nixon I*, however, must be considered in context and in light of the scope of the court's analysis. The purpose of the rule in *Green*, *supra*, 27 Cal.3d 1 was to prevent a jury from finding a felony-murder special circumstance true when the underlying felony was merely incidental to murder. (See *People v. Ainsworth* (1988) 45 Cal.3d 984, 1026 [*Green* stands for the proposition that, "when the underlying felony is *merely incidental* to the murder, the murder cannot be said to constitute 'a murder in the commission of' the felony and will not support a finding of felony-murder special circumstance."].) If the evidence suggested the defendant had an "independent purpose" to commit murder, the court under *Green* had to instruct the jurors that they could not find a felony-murder special circumstance allegation true unless the People proved the defendant "harbored an independent felonious purpose as to [the underlying felony]." (*Ainsworth*, at p. 1026.)

Thus, the court's analysis in *Nixon I* was limited to the question whether there was evidence showing Nixon had an independent purpose to commit murder such that the trial court had a duty to instruct under *Green*, and the court's statement regarding Nixon's intent to commit murder was essentially an inartful way to say there was no such evidence. In other words, the court in *Nixon I* was stating that, because there was no

24

evidence murder was Nixon's sole and independent purpose, the trial court did not have a sua sponte duty to give a *Green* instruction. (See *People v. Raley* (1992) 2 Cal.4th 870, 903 ["[c]oncurrent intent to kill and to commit an independent felony will support a felony-murder special circumstance"; it is "when the underlying felony is merely incidental to a murder that we apply the rule of *Green*"]; *People v. Clark*, *supra*, 50 Cal.3d at pp. 608-609 [*Green* rule does not apply where the defendant has "independent, albeit concurrent, goals" of murder and arson]; see also *People v. Thomas* (Jan. 26, 2023, No. S161781) ___ Cal.5th ___, ___ [2023 WL 408958, p. 26] ["A concurrent intent to rob and to kill will support the special circumstance allegation: 'The question is "whether the defendant had a 'purpose for the [robbery] apart from murder.""""].) The statement in the *Nixon I* opinion Nixon relies on does not undermine the jury's unchallenged findings that Nixon intended to kill when he threw a Molotov cocktail at an occupied house at night.

Nixon argues *People v. Cooper* (2022) 77 Cal.App.5th 393 compels the opposite result. The court in *Cooper* held "a trial court cannot deny relief in a section [1172.6] proceeding based on findings that are inconsistent with a previous acquittal when no evidence other than that introduced at trial is presented." (*Id.* at p. 398.) In *Cooper* the jury in the petitioner's trial acquitted him on the charge of being a felon in possession of a firearm. (*Id.* at p. 397.) But the superior court in that case denied relief under section 1172.6 based in part on the court's belief the petitioner "possessed and fired a gun" in the commission of first degree murder. (*Id.* at p. 398.) The court in *Cooper* reversed the order denying the petition and directed the superior court to consider

whether the prosecution proved beyond a reasonable doubt the petitioner was ineligible for relief under section 1172.6 for reasons other than those related to whether the petitioner used or possessed a firearm. (*Ibid.*) *Cooper* is distinguishable because the superior court did not find Nixon was ineligible for resentencing for a reason that was inconsistent with the jury's findings.

**DISPOSITION**

The order is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


HOWARD, J.*

---

* Judge of the Marin County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26